Slip Op. 11-92

## UNITED STATES COURT OF INTERNATIONAL TRADE

JTEKT CORPORATION and KOYO
CORPORATION OF U.S.A.,

                Plaintiffs,

    v.

UNITED STATES,

                Defendant,

    and

THE TIMKEN COMPANY,

                Defendant-Intervenor.

Before: Timothy C. Stanceu, Judge

Consol. Court No. 06-00250

## OPINION AND ORDER

[Affirming in part and remanding in part a remand redetermination in an administrative review of an antidumping duty order on ball bearings]

Dated: July 29, 2011

*Sidley Austin, LLP* (*Neil R. Ellis* and *Jill Caiazzo*) for plaintiffs JTEKT Corporation and Koyo Corporation of U.S.A.

*Baker & McKenzie, LLP* (Washington, District of Columbia and Chicago, Illinois) (*Kevin M. O'Brien*, *Kevin J. Sullivan*, *Diane A. MacDonald*, *Christine M. Streatfeild*, and *Sonal Majmudar*) for plaintiffs FYH Bearing Units USA, Inc. and Nippon Pillow Block Company Ltd.

*Crowell & Moring, LLP* (*Matthew P. Jaffe*, *Alexander H. Schaefer*, *Nicole M. Jenkins*, and *Robert A. Lipstein*) for plaintiffs NSK Corporation, NSK Ltd., and NSK Precision America, Inc.

*Baker & McKenzie, LLP* (Washington, District of Columbia and Chicago, Illinois) (*Kevin M. O'Brien, Christine Streatfeild,* and *Diane A. MacDonald*) for plaintiffs American NTN Bearing Manufacturing Corp., NTN Bearing Corporation of America, NTN Bower Corporation, NTN Corporation, NTN Driveshaft, Inc., and NTN-BCA Corporation.

O'Melveny & Myers, LLP (*Greyson L. Bryan* and *Nausheen Hassan*) for plaintiffs Nachi Technology, Inc., Nachi-Fujikoshi Corporation, and Nachi America, Inc.

*Tony West*, Assistant Attorney General, *Jeanne E. Davidson*, Director, *Patricia M. McCarthy*, Assistant Director, Commercial Litigation Branch, Civil Division, United States Department of Justice (*Claudia Burke*); *Jennifer I. Johnson*, *Hardeep Josan*, *Natasha Robinson*, *Sapna Sharma*, *Mykhaylo Gryzlov*, *Jonathan Zielinksi*, and *Deborah R. King*, Office of Chief Counsel for Import Administration, United States Department of Commerce, of counsel, for defendant.

Stewart and Stewart (*Geert M. De Prest*, *Terence P. Stewart*, *William A. Fennell*, and *Lane S. Hurewitz*) for plaintiff and defendant-intervenor The Timken Company.

Stanceu, Judge: Before the court is the redetermination ("Remand Redetermination")

issued by the United States Department of Commerce ("Commerce," or the "Department")

pursuant to the court's remand order in *JTEKT Corp. v. United States*, 33 CIT __, 675 F. Supp.

2d 1206 (2009) ("*JTEKT*"). Final Results of Redetermination ("Remand Redetermination"). In

*JTEKT*, the court ordered reconsideration of certain decisions in the Department's published

determination ("Final Results") concluding the sixteenth administrative reviews ("AFBs 16") of

antidumping duty orders on ball bearings and parts thereof ("subject merchandise") from France,

Germany, Italy, Japan, and the United Kingdom. *See JTEKT*, 33 CIT at __, 675 F. Supp. 2d

at 1263-64; *Ball Bearings & Parts Thereof from France, Germany, Italy, Japan, & the United

Kingdom: Final Results of Antidumping Duty Admin. Reviews*, 71 Fed. Reg. 40,064 (July 14,

2006) ("*Final Results*"). The reviews applied to entries of subject merchandise made during the

period of May 1, 2004 through April 30, 2005 ("period of review" or "POR"). *Final Results*,

71 Fed. Reg. at 40,064. This action concerns the review of the antidumping order pertaining to

subject merchandise from Japan, in which Commerce assigned weighted-average dumping

margins to Japanese respondents JTEKT Corporation ("JTEKT"), Nachi-Fujikoshi Corporation

("Nachi"), Nippon Pillow Block Company, Ltd. ("NPB"), NSK Ltd. ("NSK"), and NTN

Corporation ("NTN"), all of which are plaintiffs in this case.  *Id*. at 40,066.  Because the Remand

Redetermination complies only in part with the remand order in *JTEKT* and with applicable law,

the court affirms the Remand Redetermination in part and issues a second remand order.

In the Remand Redetermination, Commerce addressed the five issues the court identified

in its remand order in *JTEKT*, 33 CIT at __, 675 F. Supp. 2d at 1263-64.  Remand

Redetermination 1.  On three of those issues, Commerce did not change its positions but

provided additional explanation.  Those issues arose from NPB's proposal during the review to

expand the choice of months for sampled transactions, NTN's proposal to incorporate additional

bearing design types in the Department's model match methodology, and the claim of petitioner

The Timken Company ("Timken"), a plaintiff and defendant-intervenor in this consolidated

action, that Commerce should have used U.S. interest rates, not Japanese interest rates, to

calculate a portion of certain respondents' inventory carrying costs.  *Id*.  On the remaining two

issues, Commerce made changes to the Final Results in response to the court's remand order.  *Id*.

at 26-31.  Commerce redetermined the weighted-average antidumping duty margin for NTN after

recalculating NTN's freight expense to base the expense on rate rather than value, and it

redetermined the margin for Nachi upon limiting its previous application of facts otherwise

available and adverse inferences to instances of errors in certain reporting occurring during the

review.  *Id.*

Challenging the Remand Redetermination are NPB and NTN.  Pls. Nippon Pillow Block

Co. Ltd. and FYH Bearing Units USA, Inc.'s Comments on the Final Results of Redetermination

("NPB Comments"); Comments of NTN Corp., NTN Bearing Corp. of America, American NTN

Bearing Mfg. Corp., NTN-BCA Corp., NTN-Bower Corp., and NTN Driveshaft, Inc. on Final

Results of Redetermination ("NTN Comments").

 Also before the court is NTN's motion for a stay pending further administrative action on,

or alternatively for further briefing on, the issue of whether or not it was lawful for Commerce to

apply its "zeroing" procedure in the calculation of a weighted-average dumping margin, under

which Commerce assigned to U.S. sales made above normal value a dumping margin of zero,

instead of a negative margin, when calculating weighted-average dumping margins.  Pl.'s Mot. to

Stay Further Proceedings Pending the Finality of New Antidumping Margin Methodology or, in

the Alternative, Mot. to Allow Further Briefing ("NTN Mot. to Stay").  The court construes

NTN's motion as a motion for reconsideration of the court's decision in *JTEKT* affirming the

Department's use of the zeroing procedure in the Final Results.  Defendant and defendant-

intervenor oppose NTN's motion.  Def.'s Opp'n to Mot. to Stay; The Timken Co.'s Opp'n to

NTN's Mot. for Stay, or, Alternatively, Further Briefing.  NTN filed a motion to reply to

defendant's and defendant-intervenor's opposition.  Pl.'s Unopposed Mot. for Leave to File a

Reply to Def.'s Opp'n to the Mot. to Stay ("NTN Mot. to Reply").

 The court affirms the decisions made in the Remand Redetermination to reject NPB's

proposal to expand the choice of months for sampled transactions, to use U.S. rather than

Japanese interest rates in calculating the inventory carrying costs, to recalculate NTN's freight

expenses based on weight rather than value, and to limit the application of facts otherwise

available and adverse inferences to instances in which Nachi made errors in reporting.  The court

remands the Remand Redetermination for reconsideration of the Department's decisions to

reject NTN's proposal on additional bearing design types and to apply zeroing in determining the

margins for JTEKT, Nachi, NPB, and NTN.  Due to its ordered reconsideration of the zeroing

decision, the court declines to order a stay or additional briefing on that issue.

## I. BACKGROUND

In *JTEKT*, the court remanded the Final Results, directing Commerce to address the five

issues previously identified. *JTEKT*, 33 at CIT __, 675 F. Supp. 2d at 1263-64.  The court's

opinion and order associated with the remand provides detailed background information.  *See id.*

at __, 675 F. Supp. 2d at 1213-14.  Commerce issued a draft version of the Remand

Redetermination ("Draft Remand Results") on March 22, 2010, upon which NPB, NTN, and

Timken commented.  Remand Redetermination 2.  Commerce submitted the Remand

Redetermination to the court on May 17, 2010.

On January 28, 2011, NTN filed its motion for a stay pending further administrative

action on, or for further briefing on, the zeroing issue, which defendant and defendant-intervenor

oppose.  NTN Mot. to Stay; Def.'s Opp'n to Mot. to Stay; The Timken Co.'s Opp'n to NTN's

Mot. for Stay, or, Alternatively, Further Briefing.  On February 18, 2011, NTN filed its motion

for leave to reply to Timken's and defendant's opposition to its motion to stay or for further

briefing.  NTN Mot. to Reply.

## II. DISCUSSION

The court will affirm the Remand Redetermination if it complies with the remand order,

rests on findings supported by substantial record evidence, and is otherwise in accordance with

law.  *See* Tariff Act of 1930 ("Tariff Act" or the "Act"), § 516A(b)(1)(B)(i), 19 U.S.C.

§ 1516a(b)(1)(B)(i) (2006); *Consol*. *Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938) (substantial

evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a

conclusion"); *JTEKT*, 33 CIT at __, 675 F. Supp. 2d at 1263-64.

<u>A.  Challenges to the Application of the Department's Zeroing Methodology</u>

Commerce applied its "zeroing" methodology in AFBs 16, under which it assigned to

U.S. sales made above normal value a dumping margin of zero, instead of a negative margin,

when calculating weighted-average dumping margins.  *Issues & Decision Mem. for the*

*Antidumping Duty Admin. Reviews of Ball Bearings & Parts Thereof from France, Germany,*

*Italy, Japan, & the United Kingdom for the Period of Review May 1, 2004, through April 30,*

*2005*, at 11-12 (July 14, 2006) ("*Decision Mem.*").  JTEKT, Nachi, NPB, and NTN challenged

the use of this zeroing methodology in AFBs 16, arguing that use of the zeroing methodology in

an administrative review violates the U.S. antidumping laws and is inconsistent with

international obligations of the United States.  Mem. of P. & A. in Supp. of Mot. of Pls. JTEKT

Corp. & Koyo Corp. of U.S.A. for J. on the Agency R. 44-47 ("JTEKT Mem."); Mem. in Supp.

of the Mot. for J. upon the Agency R. Submitted by Pls. Nippon Pillow Block Co. Ltd. & FYH

Bearing Units USA, Inc. 28-30 ("NPB Mem."); Rule 56.2 Mot. & Mem. for J. on the Agency R.

Submitted on behalf of Pls. NTN Corp., NTN Bearing Corp. of America, American NTN

Bearing Mfg. Corp., NTN-BCA Corp., NTN-Bower Corp., & NTN Driveshaft, Inc. 5-11 ("NTN

Mem."); Br. of Pls. Nachi-Fujikoshi Corp., Nachi America, Inc. & Nachi Technology, Inc. in

Supp. of Rule 56.2 Mot. for J. on the Agency R. 13-18 ("Nachi Mem.").

Referring to a Federal Register notice published in late 2010 by the Department on the

discontinuation of zeroing in administrative reviews, NTN moves for a stay of this case pending

a final notice of the Department's decision to eliminate zeroing in administrative reviews, or,

alternatively, the opportunity to submit additional briefing on the zeroing issue.  NTN Mot. to

Stay 1-2 (citing *Antidumping Proceedings: Calculation of the Weighted Average Dumping*

*Margin and Assessment Rate in Certain Antidumping Duty Proceedings*, 75 Fed. Reg. 81,533

(Dec. 28, 2010) ("*Proposal*")).  Defendant and defendant-intervenor oppose this motion on the

grounds, *inter alia*, that the court is bound by precedents of the Court of Appeals for the Federal

Circuit ("Court of Appeals") to uphold the Department's application of zeroing and that the

modification contemplated by the Department's Federal Register notice will not affect,

retroactively, the entries at issue in this case.  Def.'s Opp'n to Mot. to Stay; The Timken Co.'s

Opp'n to NTN's Mot. for Stay, or, Alternatively, Further Briefing.

  In the Federal Register notice to which NTN refers in its motion, Commerce proposed

certain changes to the method by which it calculates weighted-average margins in periodic and

sunset reviews, in response to adverse World Trade Organization ("WTO") decisions concluding

that zeroing is contrary to the WTO Antidumping Agreement.  *Proposal*, 75 Fed. Reg. at 81,534-

35.  With respect to periodic reviews, the Department proposes to "modify its methodology for

calculating weighted average margins of dumping and assessment rates to provide offsets for

non-dumped comparisons while using monthly average-to-average comparisons in reviews in a

manner that parallels the WTO-consistent methodology the Department currently applies in

original investigations."  *Id.* at 81,534.  Commerce proposes to amend its regulations, codified at

19 C.F.R. § 351.414, to change its preference from the use of average-to-transaction comparisons

in periodic reviews to the use of monthly average-to-average comparisons.  *Id.* at 81,534-35.

Commerce has not issued a final regulation on the zeroing issue.

In *JTEKT*, the court upheld the Department's use of zeroing.  *JTEKT*, 33 CIT at __,

675 F. Supp. 2d at 1214-18 (citing *Koyo Seiko Co. v. United States*, 551 F.3d 1286, 1291 (Fed.

Cir. 2008); *NSK Ltd. v. United States*, 510 F.3d 1375, 1379-80 (Fed. Cir. 2007); *Timken Co. v.

United States*, 354 F.3d 1334, 1343-45 (Fed. Cir. 2004)).  After the issuance of *JTEKT* and the

Department's Remand Redetermination, and after the opportunity for the parties to comment on

the Remand Redetermination, the Court of Appeals issued two decisions holding that the final

results of an administrative review in which zeroing was used must be remanded for an

explanation of the Department's interpreting the language of 19 U.S.C. § 1677(35) inconsistently

with respect to the use of zeroing in investigations and the use of zeroing in administrative

reviews.  *JTEKT Corp. v. United States,* 642 F.3d 1378, 1383-85 (Fed. Cir. 2011) ("*JTEKT

Corp.*"); *Dongbu Steel Co. v. United States*, 635 F.3d 1363, 1371-73 (Fed. Cir. 2011)

("*Dongbu*").  Based on conclusions that Commerce had not provided a satisfactory explanation

for the differing interpretations in the two contexts, the Court of Appeals in *JTEKT Corp.* and

*Dongbu* held that the judgment of the Court of International Trade affirming the use of zeroing in

the administrative reviews at issue in those cases must be set aside.  *JTEKT Corp.*, 642 F.3d at

1384-85; *Dongbu*, 635 F.3d at 1372-73.  In *Dongbu*, the Court of Appeals reasoned that

"[a]lthough 19 U.S.C. § 1677(35) is ambiguous with respect to zeroing and Commerce plays an

important role in resolving this gap in the statute, Commerce's discretion is not absolute" and

concluded that "Commerce must provide an explanation for why the statutory language supports

its inconsistent interpretation."  *Dongbu*, 635 F.3d at 1372.  In *JTEKT Corp.*, the Court of

Appeals further directed that "in order to satisfy the requirement set out in *Dongbu*, Commerce

must explain why these (or other) differences between the two phases [using zeroing in

administrative reviews, but not in investigations] make it reasonable to continue zeroing in one phase, but not the other." *JTEKT Corp.*, 642 F.3d at 1385.

The court construes NTN's motion for a stay pending further administrative action on, or alternatively for further briefing on, the zeroing issue as a motion for reconsideration of the court's decision in *JTEKT*, 33 CIT __, 675 F. Supp. 2d 1206 to uphold the use of zeroing. Although only NTN has filed such a motion, the court, in its discretion and in consideration of the holdings in *JTEKT Corp.* and *Dongbu*, will reconsider *sua sponte* its decision upholding the Department's use of zeroing in the Final Results in determining the margins for JTEKT, Nachi, and NPB as well as NTN. In doing so, the court concludes that a remand is appropriate in this case to direct Commerce to provide the explanation contemplated by the Court of Appeals in *Dongbu* and *JTEKT Corp.*, both of which decisions questioned the legality of the Department's construction of 19 U.S.C. § 1677(35) and declined to affirm the judgment of the Court of International Trade upholding the use of zeroing. *See JTEKT Corp.*, 642 F.3d at 1383-85; *Dongbu*, 635 F.3d at 1371-73. The court on second remand will direct Commerce to reconsider its decision to apply zeroing when determining the margins for JTEKT, Nachi, NPB, and NTN. The Department, on remand, must alter that decision or set forth an explanation of how the language of 19 U.S.C. § 1677(35) as applied to the zeroing issue permissibly may be construed in one way with respect to investigations and the opposite way with respect to administrative reviews. *See JTEKT Corp. v. United States*, 35 CIT __, 768 F. Supp. 2d 1333, 1364 (2011).

The court does not agree with the argument of defendant and defendant-intervenor that the court is bound by Court of Appeals precedent to uphold the use of zeroing in this case. In *Dongbu*, the Court of Appeals applied the two-step analysis outlined in *Chevron, U.S.A., Inc. v.*

*National Resources Defense Council, Inc.*, 467 U.S. 837, 842-43 (1984) ("*Chevron*").  *See*

*Dongbu*, 635 F.3d at 1369-73.  Distinguishing prior holdings in which it had upheld the

Department's use of zeroing, the Court of Appeals stated in *Dongbu* that "while we have

repeatedly upheld Commerce's use of zeroing in administrative reviews, we have never

considered the reasonableness of interpreting 19 U.S.C. § 1677(35) in different ways depending

on whether the proceeding is an investigation or an administrative review."  *Id.* at 1370.

Observing that "Commerce is no longer using a consistent interpretation" of 19 U.S.C.

§ 1677(35), the Court of Appeals reasoned in *Dongbu* that "we are not bound by the prior cases

and apply the *Chevron* step two analysis anew."  *Id.* at 1371.  In *JTEKT Corp.*, the Court of

Appeals did, however, consider itself bound by its holding in *Dongbu*, concluding that "*Dongbu*

requires us to vacate and remand" based on a conclusion that the explanation offered by

Commerce was inadequate under step two of a *Chevron* analysis.  *JTEKT Corp.*, 642 F.3d

at 1384.

    Because the court is remanding for further explanation the Department's decision to apply

the zeroing methodology, the court sees no need for a stay as sought by NTN.  Also, because the

parties will have the opportunity to comment on the results the Department issues in response to

the second remand, the court does not perceive the need for other, separate briefing on the

zeroing issue at this time.  For these reasons, the court also will deny, as moot, NTN's motion for

leave to file a reply to defendant's and defendant-intervenor's opposition to that motion.

### B.  NPB's Proposal to Expand the Choice of Sample Months

In the review, Commerce resorted to sampling of transactions for NPB (and similarly situated respondents) because NPB entered into a relatively high volume (10,000 or more) of constructed export price sales in the United States and 10,000 or more transactions in the home market, during the POR.  *JTEKT*, 33 CIT at __, 675 F. Supp. 2d at 1224 (citing *Ball Bearings & Parts Thereof from France, Germany, Italy, Japan, & the United Kingdom: Prelim. Results of Antidumping Duty Admin. Reviews*, 71 Fed. Reg. 12,170, 12,172-74 (Mar. 9, 2006)).  For a respondent such as NPB, Commerce reviewed the individual U.S. sales occurring in six "sample weeks," each of which Commerce chose from one of the six two-month periods in the POR, and endeavored to match these individual sales with home market transactions in "sampled months." *Id*.  Commerce first chose as the sample month the month in which the sample week (and U.S. sale) occurred, but if no matches were found during that month, Commerce also looked to the preceding home market sample month and to the subsequent home market sample month.  *Id*. at 1225.  Because Commerce selected only eight sample months, the sample month for an individual U.S. sale was not in all cases the immediately previous or immediately subsequent month.[1]  *Id*.  In the Remand Redetermination, Commerce referred to the corresponding window period as "the 30/30-day sample window period."  Remand Redetermination 4.

In its challenge to the Final Results, NPB claimed that Commerce impermissibly confined its search for possible matches to the designated sample months.  *Id*.  NPB objected that "the

---

[1] The home-market sample months in the administrative review were February, June, August, September, and November of 2004, and February, March, and May of 2005.  Remand Redetermination 7.

Department searched only in immediately adjacent sample months, so that a U.S. sale had only

three potential months in which to find a normal value match." NPB Mem. 27.  NPB argued that

this method compares unfavorably to the method the Department uses absent sampling, which

potentially examines home market sales during a period of up to three months prior to, or up to

two months later than, the month in which the U.S. sale occurred.  *Id.*  In the Remand

Redetermination, the Department refers to this normal period, established by 19 C.F.R.

§ 351.414(e)(2) (2009), as the "90/60-day window period."[2]  Remand Redetermination 3.

As NPB stated in their brief, "[t]o correct this, NPB suggested that the Department increase the

search window around sampled sales by an additional month in either direction, for a total of two

months on each side of the sampled month."  NPB Mem. 27 (citing *Letter from Baker &*

*McKenzie, LPP to Dep't of Commerce* 20-22 (Apr. 25, 2006) (Admin. R. Doc. No. 259)).

Reasoning that § 351.414(e)(2), which defines the reasonably corresponding

contemporaneous month as "*normally*" the 90/60-day window period, did not preclude

---

[2] For purposes of comparing U.S. and home market sales, the regulation defines the "contemporaneous month" as follows:

> (2) Contemporaneous month.  Normally, the Secretary will select as the contemporaneous month the first of the following which applies:
>
> (i) The month during which the particular U.S. sale under consideration was made;
>
> (ii) If there are no sales of the foreign like product during this month, the most recent of the three months prior to the month of the U.S. sale in which there was a sale of the foreign like product.
>
> (iii) If there are no sales of the foreign like product during any of these months, the earlier of the two months following the month of the U.S. sale in which there was a sale of the foreign like product.

19 C.F.R. § 351.414(e)(2) (2009).  This regulation applies in the "average-to-transaction method" that Commerce normally employs in an administrative review.  *See id.* § 351.414(c)(2).

Commerce from exercising discretion to select a month outside of the definition of "comparison

month" should circumstances so require, the court held in *JTEKT* that Commerce erred in

concluding that the regulation required rejection of NPB's proposal.  *JTEKT*, 33 CIT at __,

675 F. Supp. 2d at 1226; *see Decision Mem.* 86 ("Given the fact that sample home-market

months are separated by a month or more between each other in either direction, extending the

window period by a month in each direction often results in extending the window period beyond

the time period our regulation allows.").

In the Remand Redetermination, the Department takes the position that "[o]ur 30/30-day

sample window period is a reasonable interpretation of section 773(a)(1)(A) of the Act and

19 C.F.R. [§] 351.414(e)(2) and NPB does not demonstrate otherwise."  Remand

Redetermination 12.  Commerce defends its use of the 30/30-day sample window period in

AFBs 16 as consistent with its practice in earlier AFBs reviews and as a reasonable method of

reducing the administrative burden of calculating individual margins where large volume of

transactions are involved.  *Id.* at 11-12.  As the Department explains,

> [d]ue to the extremely large number of transactions that occurred during the
> review period and the resulting administrative burden involved in calculating
> individual margins for all of the transactions in the proceedings concerning ball
> bearings and parts thereof from various countries, the use of the 30/30-day sample
> window period has been an established practice for two decades since *AFBs* 1.

Remand Redetermination 12 (citing *Antifriction Bearings (Other Than Tapered Roller Bearings)*

*and Parts thereof from Japan; Prelim. Results of Antidumping Duty Admin. Reviews & Partial*

*Termination of Antidumping Duty Admin. Reviews*, 56 Fed. Reg. 11,186, 11,187 (Mar. 15,

1991) ("*AFBs 1*")).

        NPB is correct that under the 30/30-day sample window period "a U.S. sale had only

three potential months in which to find a normal value match."  NPB Mem. 27.  NPB draws a

comparison with the ordinary 90/60-day window period, under which six, rather than three,

comparison months potentially are available in which Commerce may search for a match.  *Id.*

However, NPB's objection does not suffice as a ground by which the court could hold the

challenged methodology to be unreasonable and therefore contrary to law.  As Commerce

correctly points out in the Remand Redetermination, "[t]he statute does not define the

'reasonably corresponding' contemporaneous period."  Remand Redetermination 11 (citing

section 773(a)(1)(A) of the Tariff Act, 19 U.S.C. § 1677b(a)(1)(A)).  The statute affords the

Department discretion in sampling transactions and in selecting a reasonably corresponding

contemporaneous period.  That discretion may have allowed Commerce to adopt a proposal such

as that put forth by NPB, but the court cannot conclude that Commerce was required to use a

different method of sampling than the one it used this case.  Although NPB's proposal or a

similar method of expanding the contemporaneous period could be expected to result in more

numerous matches, the Department is also entitled to consider its past practice and the

deleterious effect on its resources were it required to search additional months for home market

sales.  For these reasons, the court cannot agree with NPB that Commerce's method, when

considered according to the new justification offered in the Remand Redetermination, was

unreasonable.[3]  Therefore, the court affirms the Remand Redetermination in regards to this issue.

---

        [3] Observing that the proposal of FYH Bearing Units USA, Inc. and Nippon Pillow Block
Company Ltd. (collectively, "NPB") could result in the use of sample months outside of the
ordinary 90/60-day window period, the Remand Redetermination also states that "we do not find
that NPB's proposal satisfies the contemporaneity requirement in section 773(a)(1)(A) of the Act
                                                                                    (continued...)

### C.  Redetermination of NTN's Freight Expense

In *JTEKT*, the court set aside as unlawful the Department's decision to reallocate only

NTN's freight cost as opposed to the freight cost of all similarly-situated respondents.  *JTEKT*,

33 CIT at __, 675 F. Supp. 2d at 1263-64.  The court held that Commerce's decision to reallocate

only NTN's freight expense according to weight was impermissibly arbitrary because Commerce

did not require any other respondent to comply with the Department's new position that value-

based allocations are distortive per se and because Commerce postponed to a future

administrative review its application of its new position to all respondents other than NTN who

used a value-based allocation.  *Id.* at __, 675 F. Supp. 2d at 1240.  The court concluded, further,

that Commerce erred in basing its decision to reallocate only NTN's freight expense on its

finding that only NTN's data were suitable for conducting a reallocation even though other

respondents also used value-based allocations, which Commerce no longer considered to satisfy

its regulatory requirement, as set forth in 19 C.F.R. § 351.401(g), that allocation methods not be

distortive.  *Id.* at __, 675 F. Supp. 2d at 1239-40.  In addition, the court observed that, contrary to

the Department's statements, Commerce did not have on the record for NTN a complete set of

product weight data with which to reallocate NTN's freight expense according to weight.  *Id.*

(observing that Commerce ignored the record fact that Commerce had weight data for only some

of NTN's models and resorted to its own methodology of estimating shipping weights for others

---

[3](...continued)
and 19 CFR 351.414(e)(2)."  Remand Redetermination 13.  The court finds questionable, but
also superfluous, this additional rationale for rejection of NPB's proposal.  The court affirms the
Department's use of the 30/30-day window period for the reasons the court has stated.

of NTN's models (citing *Mem. from Financial Analyst, AD/CVD Operations, Office 5, to The File* 7-9 (Mar. 2, 2006) (Admin. R. Doc. No. 222))).

In the Remand Redetermination, Commerce stated that it disagreed with the court's order "to calculate NTN's freight expenses in a manner consistent with [Commerce's] treatment of other respondents' reported freight allocations where, different from other respondents, [Commerce] had certain weight information for NTN on the record." Remand Redetermination 27. Commerce, however, did reallocate NTN's freight expense "in a manner consistent with our treatment of other respondents' reported freight allocations" and recalculated NTN's margin using the freight expense data as reported originally by NTN. *Id*. at 27, 31. NTN's margin was revised from 9.32% to 8.02%. *Id*. at 31.

No party commented on the Department's revised calculation of NTN's freight expense in the Department's Draft Remand Results, nor did any party comment on the issue before the court. *See id*. at 27, 31. Under these circumstances, the court reasonably may infer that the parties concur in the Remand Redetermination. *See Wuhan Bee Healthy Co. v. United States*, 32 CIT __, __, Slip Op. 08-61, at 12 (May 29, 2008) ("Under such circumstances, Commerce 'may well be entitled to assume that the silent party has decided, on reflection, that it concurs in the agency's [remand results],' and the court will uphold the parties' concurrence." (quoting *AL Tech Specialty Steel Corp. v. United States*, 29 CIT 276, 285, 366 F. Supp. 2d 1236, 1245 (2005))). Accordingly, the court affirms this aspect of the Remand Redetermination.

### D.  Nachi's Errors in Reporting Physical Bearing Characteristics

In *JTEKT*, the court set aside as unlawful the Department's decision to apply facts otherwise available and adverse inferences to all of Nachi's sales based on the Department's finding that Nachi erred in reporting physical characteristics for certain sampled sales.  *JTEKT*, 33 CIT at __, 675 F. Supp. 2d at 1252-54.  The Remand Redetermination characterized the court's order as requiring it to "revise [its] analysis to use facts available only for the portion of Nachi's reported information that is the subject of a finding that is supported by substantial evidence on the record  i.e., those models for which the physical characteristics we found to have been misreported  and to redetermine Nachi's margin accordingly."  Remand Redetermination 27.  In the Remand Redetermination, the Department stated that it "ceased using facts otherwise available for Nachi in connection with physical characteristics that the Department did not examine and re-calculated the margin for Nachi using the reported data as corrected for specific verification findings."  *Id*. at 31.

No party commented on the Department's revised calculation of Nachi's antidumping duty margin in AFBs 16 in the Draft Remand Results, nor did any party comment on this revised calculation before the court.  *See id*.  As stated above, under such circumstances, the court reasonably may infer that the parties concur in the Remand Redetermination.  *See Wuhan Bee Healthy Co.*, 32 CIT at __, Slip Op. 08-61, at 12.  Accordingly, the court affirms this aspect of the Remand Redetermination.

E.  Use of Japanese Interest Rates to Calculate a Portion of the Adjustment for Imputed Interest
    Carrying Costs When Determining Constructed Export Prices for NTN and Nachi

In *JTEKT*, the court directed that Commerce reconsider its decision to use Japanese

interest rates when calculating U.S. inventory carrying costs with respect to Nachi and NTN.

*JTEKT*, 33 CIT at __, 675 F. Supp. 2d at 1262-63.  Although rejecting various grounds upon

which Timken challenged that decision, the court concluded that the Decision Memorandum did

not respond to Timken's argument, made during the review, that the use of Japanese interest rates

instead of U.S. interest rates was a departure from a practice or established methodology.  *Id.*

at __, 675 F. Supp. 2d at 1262.  On remand, the court directed Commerce "to provide an analysis

responding to Timken's argument concerning a departure from an alleged practice or

methodology." *Id.* at __, 675 F. Supp. 2d at 1264.

In the Remand Redetermination, the Department did not change its calculation

methodology for Nachi's and NTN's inventory-carrying costs incurred in the United States.

Instead, the Department, citing various past administrative decisions, explained that its use of

Japanese interest rates conformed with its long-standing practice and did not constitute a

departure from an established practice or methodology.  Remand Redetermination 25-26.  The

Department stated as follows:

> [w]hile we recognize that there may be exceptions, it has generally been our long-
> standing practice that, if the payment terms that the parent company extends to its
> U.S. subsidiary, in combination with the time the merchandise remains in the U.S.
> subsidiary's inventory, indicates that the parent company bears the cost of
> carrying the merchandise for a portion of time the merchandise is in inventory in
> the United States, we use the parents company's short-term interest rate to
> calculate that portion of the inventory-carrying cost.

*Id.* at 25 (footnote omitted).  Further, the Department explained that in previous administrative

reviews of the antidumping duty orders on ball, cylindrical roller, and spherical plain bearings

from Japan, it used Japanese yen-based interest rates for the portion of the inventory-carrying

period in which the parent company bore on behalf of its U.S. subsidiary the cost of carrying the

inventory in the United States.  *Id.* (footnote omitted).

No party commented on the Department's explanation.  *Id.* at 26.  Here also, the court

reasonably may infer that the parties concur in the resolution of the interest rate issue as set forth

in the Remand Redetermination.  *See Wuhan Bee Healthy Co.*, 32 CIT at__, Slip Op. 08-61,

at 12.  Accordingly, the court affirms the resolution of this issue in the Remand Redetermination.

### F.  NTN's Proposal for Additional Ball Bearing Design Types

NTN claimed that Commerce erred in refusing to recognize and apply the additional ball

bearing design types that NTN proposed for use in the model matching process.  NTN

Mem. 26-30.  NTN argued that the seven ball bearing design types that Commerce identified,

*i.e.*, angular contact, self-aligning, deep groove, integral shaft, thrust ball, housed, and insert, are

overly broad and fail to account for significant physical characteristics.[4]  *Id.* at 27.  NTN also

objected that "Commerce's design codes do not take into account bearings, which fall into more

than one category, such as bearings that are both 'angular contact' and 'deep groove'."  NTN

---

[4] In the AFBs 16 reviews, Commerce adopted, in response to NTN's objection, only one
additional design type, "hub units incorporating angular contact bearings."  *Issues & Decision
Mem. for the Antidumping Duty Admin. Reviews of Ball Bearings & Parts Thereof from France,
Germany, Italy, Japan, & the United Kingdom for the Period of Review May 1, 2004, through
April 30, 2005*, at 77 (July 14, 2006) ("We do find, however, that NTN provided evidence . . .
that demonstrates that NTN's hub units incorporating angular contact bearings are significantly
different from standard angular contact bearings as well as housed bearings to warrant a
bearing-design designation distinct and separate from the seven bearing-design types we
identified in our questionnaire.").  Commerce took the position that to include an additional
design type in its model matching process, it had "to be satisfied that the classification is
substantially different from each of the design types" already included.  *Id.*

Mem. 28.  In *JTEKT*, the court observed that the Decision Memorandum did not address, and

defendant did not discuss in its briefs, NTN's objection that some bearings are described by more

than one design type.  *JTEKT*, 33 CIT at __, 675 F. Supp. 2d at 1229.  The court directed

Commerce to explain how Commerce applied its model-matching methodology to those of

NTN's bearings that appear to fall within more than one design type.  *Id*. (concluding that "the

answer to this question is relevant to the court's consideration, in the entirety, of Commerce's

decision to reject all of NTN's proposed design types other than the design-type category for hub

units incorporating angular contact bearings.").

 Commerce discussed in the Remand Redetermination the question of whether a design

type category was needed for combination bearings comprised of two angular contact bearings or

an angular contact bearing and a deep groove bearing.  Remand Redetermination 16-19.

Commerce decided against the need for additional design types for combination bearings because

it found, first, that NTN reported combinations of two angular contact bearings as an angular

contact bearing, and, second, that NTN did not have any reported combination bearings

comprised of an angular contact bearing and a deep grove bearing.  *Id.* at 17.  NTN did not

contest these findings in its comments to the court.  *See* NTN Comments.  The court concludes,

therefore, that Commerce did not err on remand in concluding that no additional design type

categories were needed for combination bearings.

 In the Draft Remand Results, Commerce concluded that it should add two new design

types, "thrust ball/angular contact" and "housed/deep groove," to "prevent product overlap."

Remand Redetermination 17.  However, in the Remand Redetermination, Commerce concluded

"in light of comments [Commerce] received in response to [its] draft remand results" that "the

current model-match methodology already has ways to handle the bearings that NTN reported

may fall within more than one design-type category" and that "[a]ccordingly, there is no need to

add additional design types." *Id.* at 17-18.

Commerce acknowledged in the Remand Redetermination that, as NTN claimed, "there

is an 'overlap' between the 'thrust ball' and 'angular contact' design types that we have

established in our questionnaire . . ." but concluded that no new design type was necessary

because record evidence supported a finding that the two groups of products as reported by NTN,

angular contact thrust ball bearings and plain thrust ball bearings, "have different load directions"

and therefore would not be compared with each other under the model-match methodology. *Id.*

at 18-19. In its comments on the Remand Redetermination, NTN does not contest this specific

finding, nor does it demonstrate that, despite the finding, a new design type for angular contact

thrust ball bearings is needed for the review at issue in this case. *See* NTN Comments. The

court concludes that Commerce, although failing in the Final Results to address the problem

NTN identified as to angular contact thrust ball bearings, has offered on remand an explanation

to support its decision not to adopt angular contact thrust ball bearings as a new design type for

purposes of the Remand Redetermination. Because NTN's comments do not contest the

Department's finding as to load direction and do not demonstrate why this finding and

explanation should not support a decision to decline to adopt the proposed new design type, the

court affirms that decision.

In the Remand Redetermination, Commerce also reversed its plan, as described in the

Draft Remand Results, to create a design type for "housed/deep groove" ball bearings.

Commerce stated therein that "NTN claims that there is an overlap in the 'housed bearing' and

'deep groove' design types because certain bearings can be characterized as both a 'housed bearing' design type and a 'deep groove' design type" but concluded that "[t]his is, in fact, not the case."  Remand Redetermination 18.  In support of this conclusion, Commerce asserts in the Remand Redetermination that, in accordance with instructions at page V-6 of its questionnaire dated July 5, 2005, respondents were to report as housed bearings any housed bearings that are also deep groove bearings and that only deep groove bearings that were not housed bearings or insert bearings were to be reported as deep groove bearings.  *Id.*  The court finds this explanation inconsistent with the record evidence to which Commerce cites, *i.e.*, page V-6 of the July 5, 2005 questionnaire.  Contrary to the Department's characterization, that page of the cited document sheds no light on what a respondent is to do when confronted with the task of classifying a housed deep groove ball bearing according to the Department's established design type categories.  *See United States Dep't of Commerce Import Admin., Request for Information, Antifriction Bearings (Other Than Tapered Roller Bearings) and Parts Thereof from France, Germany, Italy, Japan, Singapore, and the United Kingdom,* V-6 (July 5, 2005).  As NTN points out in its comments on the Remand Redetermination, the questionnaire "does not include directions for a reporting hierarchy among design types."  NTN Comments 5.  The record evidence on which the Department relies fails to support the finding in the Remand Redetermination that "there is no overlap between the 'deep groove' design type and the 'housed bearing' design type."  Remand Redetermination 18 (footnote omitted).

        Commerce made a finding in the Remand Redetermination, which NTN does not contest in its comments to the court, that bears on the issue of whether housed deep groove ball bearings should be recognized as a separate design type for purposes of this review.  Commerce found that

NTN, in reporting its bearings to Commerce for model-match purposes, applied the

Department's "housed bearing" designation to the bearings NTN described as falling into both

the housed and deep groove design type categories.   Remand Redetermination 17.   Commerce

also noted that it found no record evidence that NTN sold housed bearings that were not housed

deep groove bearings.   *Id.* at 18 n.2.   The court concludes from the record evidence and NTN's

comments on the Remand Redetermination that Commerce erred in concluding that there was no

overlap between housed and deep groove bearings, but the court is not able to conclude from the

record evidence that this error actually caused NTN's housed deep groove ball bearings to be

matched with any bearings that were not housed deep groove ball bearings or whether a related

error occurred in the matching of NTN's bearings.[5]   However, it is not the role of the court to

reach a finding that no such mismatches occurred.   Because Commerce's analysis of the housed

deep groove bearing issue is flawed for the reason the court has identified, a remand is

appropriate on this issue.

In summary, the court concludes that Commerce acted reasonably in resolving the issue,

as raised in *JTEKT*, of NTN's bearings that may be described by more than one design type, with

the exception of the housed bearing/deep-groove bearing issue discussed above.   On remand,

Commerce must review the relevant record evidence to determine whether any of NTN's housed

deep groove bearings were matched with bearings other than housed deep groove bearings, and

whether any other error involving matching of housed or deep groove bearings occurred, such as

matching of any NTN non-housed deep groove bearings that may have been included in the

---

[5] NTN does not contend in its comments that any bearings it may have classified for
reporting purposes as deep groove bearings (rather than as housed bearings) actually were housed
bearings, and the court finds no record evidence that this occurred.  *See* NTN Comments.

review with housed bearings or with any bearings that were not non-housed deep groove

bearings.  If any mismatches are revealed by this analysis, Commerce must address them through

addition of one or more new design type categories or another appropriate remedy.

### III. CONCLUSION

For the reasons discussed in the foregoing, the court will affirm in part, and remand in part, the Remand Redetermination.

### ORDER

Upon consideration of all papers and proceedings herein, it is hereby

**ORDERED** that the Final Results of Redetermination ("Remand Redetermination"), submitted by the United States Department of Commerce ("Commerce" or the "Department") on May 17, 2010, be, and hereby is, affirmed in part and remanded to Commerce in part; it is further

**ORDERED** that, for the reasons set forth in this Opinion and Order, the following decisions and determinations by Commerce in the Remand Redetermination, be, and hereby are, affirmed: (A) the Department's decision not to adopt NPB's proposal to expand the choice of sample months; (B) the Department's decision to use Japanese interest rates to calculate a portion of the adjustment for imputed interest carrying costs when calculating constructed export prices for NTN and Nachi; (C) the redetermination of NTN's freight expense based on weight rather than value; and (D) the Department's decision not to apply facts otherwise available and adverse inferences to substitute for information that Nachi submitted on physical bearing characteristics, except for the specific information submitted by Nachi that Commerce determined during its verification procedure to be incorrect; it is further

**ORDERED** that Commerce, on remand, shall reconsider its decision to apply its zeroing methodology in determining the margins for JTEKT, Nachi, NPB, and NTN and either alter that decision or set forth an explanation of how the language of 19 U.S.C. § 1677(35) as applied to the zeroing issue permissibly may be construed in one way with respect to investigations and the opposite way with respect to administrative reviews; it is further

**ORDERED** that NTN's Motion to Stay Further Proceedings Pending the Finality of New Antidumping Margin Methodology or, in the Alternative, Motion to Allow Further Briefing be, and hereby is, DENIED and NTN's Motion for Leave to File a Reply to defendant's and defendant-intervenor's opposition to NTN's Motion to Stay be, and hereby is, DENIED as moot; it is further

**ORDERED** that Commerce, on remand, shall reconsider NTN's proposal to incorporate into the model-match methodology additional design-type categories to the extent necessary to correct any errors revealed by the Department's review of the record evidence to determine whether any of NTN's housed deep groove bearings were matched with bearings that were not housed deep groove bearings and whether any other error involving matching of housed or deep groove bearings occurred during the review; it is further

**ORDERED** that Commerce shall redetermine the weighted-average dumping margins of plaintiffs, as appropriate, in complying with this Opinion and Order; it is further

**ORDERED** that Commerce shall have ninety (90) days from the date of this Opinion and Order in which to file its redetermination upon remand ("Second Remand Redetermination"), which shall comply with all directives in this Opinion and Order; it is further

**ORDERED** that plaintiffs shall have thirty (30) days from the filing of the Second Remand Redetermination in which to file comments thereon; and it is further

**ORDERED** that defendant and defendant-intervenor may file comments within have thirty (30) days from the filing of plaintiffs' comments.


                                                    /s/ Timothy C. Stanceu
                                                    Timothy C. Stanceu
                                                    Judge

Dated: July 29, 2011
       New York, New York